# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

DENISE SUZANNE MORTSON,

               Plaintiff,

       v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

Civ. No. 1:14-cv-00915-PA

**ORDER**

---

PANNER, District Judge.

Plaintiff Denise Mortson ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") finding her not disabled under Titles II and XVI of the Social Security Act. For the reasons below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Born in March 1964, Plaintiff was 46 years old on the alleged disability onset date of April 12, 2010. Tr. 87. Plaintiff speaks English and holds a GED. Tr. 44. This appeal arises from Plaintiff's second application for benefits. Plaintiff first filed for disability insurance benefits and social security income on July 21, 2008. Tr. 12. Her first application was denied initially and upon review. *Id.* Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"), which was held on February 3, 2010. *Id.*; Tr. 73-82. The ALJ issued a decision finding Plaintiff not disabled on March 22, 2010. Tr. 82. The Appeals

Council upheld the unfavorable decision on June 8, 2011. Tr. 12. Plaintiff did not seek judicial review of that decision.

In April 2010, Plaintiff filed her second application for benefits while the unfavorable decision of her first application was still under review by the Appeals Council. Tr. 87. In her second application, Plaintiff alleged disability due to pituitary adenoma brain tumor, anxiety, depression, vision problems, facial numbness in the forehead and mouth, hormonal imbalance from the tumor, and bipolar disorder. Tr. 87.

The Commissioner denied Plaintiff's application for benefits initially and upon reconsideration and she requested a hearing before an Administrative Law Judge. Tr. 12. After an administrative hearing on May 1, 2012, ALJ John Madden Jr. issued a decision finding Plaintiff not disabled. Tr. 12-23. The Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision the final Agency decision. Tr. 1-3; 20 C.F.R. § 422.210. Plaintiff now appeals the denial of her second application for benefits.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving

significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 23, 2010. Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, attention deficit hyperactivity disorder, borderline personality disorder, and post-traumatic stress disorder. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. *Id.*

In assessing the Plaintiff's RFC, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff could not work with the general public. Tr. 17.

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a small parts assembler. Tr. 21. Although the ALJ found Plaintiff able to perform past work, he still conducted the step five analysis as an alternative basis for finding Plaintiff not disabled. Tr 22. At step five, based on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, including

used car lot attendant, recycler, and hand packager. *Id.* The ALJ therefore concluded that Plaintiff was not disabled. Tr. 22-23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a

judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to find Plaintiff's pituitary adenoma and resulting headaches constituted a severe impairment; (2) improperly rejecting Plaintiff's testimony; (3) improperly dismissing the opinions of Plaintiff's treating physicians; (4) improperly rejecting lay witness testimony; (5) failing to account for all of Plaintiff's limitations in the hypothetical question posed to the vocational expert; and (6) failing to find that Plaintiff's impairments met or equaled a listed impairment.

## I.    The ALJ properly assessed Plaintiff's severe and non-severe impairments.

Plaintiff contends that the ALJ improperly assessed her chronic headaches and pituitary tumor as non-severe.   An impairment is considered "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."   20 C.F.R. § 416.920(c). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   An impairment is "not severe" if it is a "slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3P, *available at* 1996 WL 374181, at *1.

The ALJ found that Plaintiff had chronic headaches associated with a benign pituitary tumor, but determined that this impairment was non-severe because a 2012 MRI revealed that the tumor had decreased in size and was "almost completely resolved." Tr. 15, 715.   I conclude that the medical evidence supported the ALJ's conclusion regarding Plaintiff's pituitary tumor and attendant headaches.

## II.    The ALJ properly discredited Plaintiff's testimony.

When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such evidence exists, barring affirmative evidence of malingering,[1] the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff testified that she had been trying different medications and almost felt normal. Tr. 19, 52. She testified that her social anxiety makes it difficult to speak with people, and that she was paranoid, fearful, and crying every day. Tr. 19.

The ALJ found that Plaintiff's impairments could be reasonably expected to cause her alleged symptoms. *Id.* However, he found Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms not entirely credible. *Id.* The ALJ provided three primary reasons for this determination: (1) Plaintiff provided contradictory reports of her symptoms and treatment history; (2) Plaintiff has engaged in drug-seeking behavior; and (3) the medical records indicate that Plaintiff has exaggerated her symptoms. Tr. 19-20. Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony.

---

[1] The ALJ found no evidence of malingering in this case.

### a. The ALJ properly found the Plaintiff had made inconsistent reports.

The ALJ found that Plaintiff has made inconsistent and contradictory reports, which "cast significant doubt on the credibility of the claimant's allegations and the reported severity of her symptoms." Tr. 19. I conclude that the record supports the ALJ's findings.

In considering a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation," such as "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and citation omitted). In this case, Plaintiff underwent a psycho-diagnostic evaluation in 2008, during which she reported that she had never received either inpatient or outpatient psychological services and denied having ever engaged in suicide attempts. Tr. 19, 78. However, in 2009 Plaintiff told her psychiatrist that she had been psychiatrically hospitalized in 1997 and that she had made two suicidal gestures. Tr. 444. Plaintiff also reported significant difficulties with her memory, Tr. 37, 287, but was able to recall manias that she experienced in her teens and early twenties. Tr. 645. Furthermore, Plaintiff disclosed a history of substance abuse in a 2012 Bio-Psychosocial Assessment, Tr. 779, but denied any history of substance abuse to her psychiatrist. Tr. 654. I conclude that the ALJ's credibility findings are supported by substantial evidence in the record.

### b. The ALJ properly considered Plaintiff's past drug-seeking behavior.

The ALJ also noted Plaintiff's drug-seeking behavior, finding that her "misdirection, noncompliance, and inappropriate use of prescribed medications further erodes the claimant's credibility." Tr. 20. The ALJ may consider drug-seeking behavior while evaluating the claimant's credibility. *See Alexander v. Comm'r*, 373 F. App'x 741, 743-44 (9th Cir. 2010).

Plaintiff's drug-seeking behavior was also raised in her first application for benefits, in which the ALJ noted:

> [T]he claimant asked for early refills of narcotic pain medications. She would visit the emergency room and request narcotic pain medication, despite being under a pain contract with her primary care provider. In fact, the claimant's prescription for narcotic pain medications were stopped due to her breaking the pain contract. On one occasion, the claimant was seen in the emergency room for a headache and given a prescription for Vicodin. The claimant stated that the prescription did not provide enough medication and she was overheard saying they would "not even last with the bottle of vodka tonight." Finally, in December 2009, the claimant reported independently [sic] increased and then stopped Zyprexa without the knowledge or oversight of her psychiatrist.

Tr. 78-79.

In the present case, the ALJ noted the Plaintiff denied a history of substance abuse to her psychiatrist, despite the incidents identified in by the ALJ in her first application for benefits and disclosed in her own Bio-Psychosocial Assessment. Tr. 79, 654, 779. Plaintiff's psychiatrist relied on Plaintiff's report in prescribing medication. Tr. 654 ("So [Plaintiff] wants to changeover [sic] to Valium 10mgs bid. She has no history of drug addiction so I am comfortable doing this[.]"). Other evidence in the record also supports the ALJ's finding of drug-seeking behavior. Tr. 339, 783.

### c. The ALJ properly found that the medical record indicated Plaintiff had exaggerated her symptoms.

The ALJ found that "the medical record indicates that [Plaintiff] has exaggerated some of her pain. Tr. 20. Evidence that a plaintiff has overstated the severity of her symptoms is relevant to a credibility determination. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1040. In January 2011, Plaintiff's treating physician, Esteban Miller, MD, observed that Plaintiff's reported headache pain "is out of proportion to that expected." Tr. 480. Plaintiff argues that this note was taken out of context by the ALJ and that

Dr. Miller did view Plaintiff's pain as credible enough to treat. However, the specific context of that treatment note was Dr. Miller's decision to prescribe a much smaller dosage of opiates than what Plaintiff wanted. Tr. 480. Viewed in the broader context of Plaintiff's drug-seeking behavior, I conclude that the ALJ's interpretation is supported by substantial evidence.

Based on the record, I conclude that the ALJ gave clear and convincing reasons for discounting Plaintiff's testimony.

### III.    Evaluation of the Medical Evidence.

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician then that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances, the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a non-examining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066, n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and

inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### a. Dr. Maraire

In 2010, J. Nozipo Maraire, M.D., Plaintiff's neurologist, stated that Plaintiff suffered from a benign tumor of the pituitary gland and that, as a consequence "[h]er symptoms at present are debilitating." Tr. 388. In his treatment notes, Dr. Maraire stated that "at this time she cannot work, but once she [has] the appropriate evaluation and treatment she should be able to fully [integrate] into the workforce." Tr. 390. Dr. Maraire subsequently moved to South Africa and Plaintiff's treatment passed to other physicians. Tr. 20. The ALJ assigned Dr. Maraire's opinion "some weight." *Id.* In limiting the weight given to Dr. Maraire's opinion, the ALJ noted that Plaintiff's 2012 MRI showed that her tumor had shrunk considerably and was considered "almost completely resolved." Tr. 785.

Plaintiff contends that the ALJ mischaracterized Dr. Maraire's opinion and argues that Plaintiff never received the "appropriate evaluation and treatment" that Dr. Maraire recommended. Dr. Maraire tied Plaintiff's limitations to her tumor, however, and the record shows that the tumor is "almost completely resolved," regardless of the nature and extent of the treatment Plaintiff received for it. I conclude that the ALJ adequately supported his decision to assign "some weight" to Dr. Maraire's opinion.

### b. Dr. Miller

In 2011, Esteban Miller, M.D., Plaintiff's physician, opined that Plaintiff was unable to work due to her benign pituitary microadenoma and chronic headache syndrome. Tr. 643. The ALJ found Dr. Miller's opinion to be conclusory and inconsistent with the 2012 MRI and gave

no weight to Dr. Miller's opinion. Tr. 21. Plaintiff contends that the ALJ erred by not citing specific or substantial evidence that Dr. Miller's opinion should be discredited.

Statements by a medical source opining that a claimant is disabled are excluded as medical opinions because the final determination about a claimant's disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). That is, a medical source's conclusory statement that a claimant is "disabled" or "unable to work" does not bind the Commissioner to find the claimant disabled. *Id.* As noted, the 2012 MRI revealed that Plaintiff's pituitary tumor was "almost completely resolved." Tr. 785. I conclude that the ALJ adequately supported his decision to give no weight to Dr. Miller's opinion.

### c. Dr. Thein

In 2010, Michael D. Thein, M.D., Plaintiff's psychiatrist, submitted a letter in which he stated that he had been unable to stabilize Plaintiff's moods through medication and that he believed she would be unable to work as a result. Tr. 416-17. Dr. Thein was unsure how long Plaintiff's inability to work would persist. *Id.* The ALJ found Dr. Thein's opinion to be inconsistent with his treatment notes and gave the opinion "limited weight." Tr. 20-21. Plaintiff argues that the ALJ erred in making this determination.

A contradiction between a medical source's assessment of a claimant's disability and the source's other notes and observations provides a clear and convincing reason for rejecting that source's opinion. *Bayliss*, 427 F.3d at 1216. In this case, Dr. Thein's treatment notes indicate that he was able to stabilize Plaintiff's moods with various prescriptions. Tr. 422, 645, 651, 654, 704. As the ALJ noted, Dr. Thein's assessment is also inconsistent with the moderate GAF scores that he assessed during his time treating Plaintiff. Tr. 20, 416-48, 644-58. I conclude that the ALJ adequately supported his decision to give limited weight to Dr. Thein's assessment.

### d.  The DDS Opinions

The ALJ considered the opinions of the non-examining physicians and psychologists of the State Disability Determination Services ("DDS") and assigned them moderate weight.  Tr. 21.  The DDS sources assessed Plaintiff with no exertional limitations except that she could balance and climb ladders, ropes, and stairs occasionally.  Tr. 21, 97-99, 113-15, 132-35, 150-153.  They also found that she should avoid concentrated exposure to moderate hazards such as machinery and heights and that she should not work with the general public.  Tr. 21, 97-99, 113-15, 132-35, 150-153.  The ALJ concluded that the DDS opinions were generally supported by the medical records, but that they lacked the benefit of reviewing the results of the 2012 MRI.  Tr. 21.  Plaintiff argues that the ALJ erred when he gave greater weight to the opinions of the non-examining medical sources than he gave to the examining and treating physicians.

Although the opinions of treating physicians are generally accorded greater weight than those of reviewing physicians, the ALJ considers other factors in evaluating a medical opinion.  20 C.F.R. § 404.1527(c).  In this case, the ALJ noted that the DDS opinions were consistent with the medical record.  Tr. 21.  Such consistency is a valid consideration in assessing the weight given to a medical opinion.  20 C.F.R. § 404.1527(c)(4).  The ALJ gave valid reasons unrelated to the opinions of the DDS physicians for discounting the opinions of Plaintiff's treating physicians.  Tr. 20-21.  I find no error in the weight assigned to the opinions of the DDS physicians and psychologists.

## IV.    Evaluation of Lay Opinion Evidence

In June 2010, Lorin Shanley submitted a third party function report for Plaintiff.  Tr. 274-81.  Shanley opined that Plaintiff was unable to work.  Tr. 274.  He reported that she spends much of her time in a dark room.  Tr. 275.  The ALJ gave Shanley's report little weight because

he found it to be inconsistent with the medical record, including Dr. Thein's treatment notes. Tr. 21. Plaintiff argues that the ALJ erred in discounting Shanley's opinion without providing a germane reason.

Lay testimony regarding a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence the ALJ must take into account. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). The ALJ may reject lay testimony if he provides "arguably germane reasons" supported by substantial evidence, even if those reasons are not clearly linked to the ALJ's determination. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Inconsistency with the medical evidence constitutes a germane reason sufficient to discredit lay testimony. *Bayliss*, 427 F.3d at 1218. In this case, the ALJ found that Shanley's testimony was inconsistent with the treatment notes of Dr. Thein, which show that her mood stabilized with medication. Tr. 422, 645, 704. I conclude that the ALJ provided germane reasons for discounting Shanley's testimony.

## V.    Vocational Expert Testimony

At step four, the claimant has the burden to show that she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1520(e); 416.920(e). Plaintiff contends that the ALJ erred when he did not include all of Plaintiff's alleged limitations in the hypothetical posed to the vocational expert ("VE") and when he accepted the VE's classification of one of Plaintiff's previous jobs.

### a.    VE Hypotheticals

Plaintiff contends that the ALJ erred by failing to include limitations relating to concentration, persistence, and pace in the hypothetical questions he posed to the VE. "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration,

persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiff cites to the findings of the DDS physicians, who assessed moderate limitations to Plaintiff's ability to understand and remember detailed instructions, as well as moderate limitations in the ability to carry out detailed instructions and maintain attention and concentration for extended periods. Tr. 98-99, 134. Those assessments go on to find that Plaintiff "is capable of understanding and remembering simple tasks" and "is capable of sustaining concen/attn. for simple tasks," but "[m]ay have problems w/detailed tasks." Tr. 98-99, 134-35.

At step three, the ALJ accepted that Plaintiff had moderate difficulties in concentration, persistence, and pace. Tr. 16. The ALJ's first hypothetical restricted the claimant to "unskilled work only with occasional contact with coworkers or the general public." Tr. 63. The ALJ's second hypothetical restricted Plaintiff to "no work with the general public, but could get along well enough to perform work activities with supervisors and coworkers." Tr. 64-65. The VE testified that under the limitations presented in the hypotheticals, Plaintiff could perform her past work as a small parts assembler, or, in the alternative, could perform work as a used car lot attendant, a hand packager, or a recycler. Tr. 65.

The ALJ might have accounted for Plaintiff's limitations in concentration, persistence, and pace in his hypotheticals. *See Lubin v. Comm'r*, 507 F. App'x 709, 711 (9th Cir. 2013)("The hypothetical question should have included Lubin's moderate limitations in concentration, persistence, or pace"); *see also Brink v. Comm'r*, 343 F. App'x 211, 212 (9th Cir. 2009). However, I conclude that the ALJ's assessment was consistent with the restrictions identified in the medical testimony. *See Stubbs-Daniels*, 539 F.3d at 1174. Furthermore, any error was

harmless because all of the potential jobs identified by the VE at steps four and five were unskilled. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short amout of time." 20 C.F.R. § 404.1568(a). Plaintiff's ability to do such work is consistent with the findings of the DDS physicians.

### b.  Plaintiff's Past Work

One of Plaintiff's previous jobs involved manufacturing the explosive components of airbags. Tr. 45. In ruling on Plaintiff's first application for benefits, the ALJ classified that job as "process operator (DOT 550.685-090, heavy, semi-skilled, SVP 4)," and determined that Plaintiff was unable to perform that work.[2] Tr. 80. After hearing Plaintiff's testimony, the VE in the present case classified Plaintiff's previous work with airbag explosives as "small parts assembler," (DOT 739.687-030, *available at* 1991 WL 680180) which is classified as "light" and "unskilled" work. Tr. 21, 63. In response to a pair of hypotheticals posed by the ALJ, the VE testified that Plaintiff would be able to perform her past work as a small parts assembler. Tr. 64-66.

Plaintiff alleges error because of the inconsistency in the classification of Plaintiff's past work between Plaintiff's first application and the present case. I reject this argument. As noted, Plaintiff bears the burden of demonstrating that she is unable to perform her past work. *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008). Plaintiff has presented no evidence that her past work should be classified as a "process operator" as opposed to a "small parts assembler." Nor did Plaintiff's counsel object to that classification at the hearing. The ALJ adequately explored the scope of Plaintiff's past work and his reliance on the VE's testimony evaluating that work was proper. The ALJ's conclusion was based on substantial evidence.

---

[2] The Commissioner points out that the DOT code cited by Plaintiff, 550.685-090, is not for "process operator," but rather for "mixing machine tender." I note that this incorrectly identified DOT code was initially supplied by the ALJ in Plaintiff's first hearing, and not by Plaintiff. Tr. 80.

Even if the ALJ's step four determination constituted error, it is harmless error in light of the ALJ's alternative findings at step five. *See Tommasetti*, 533 F.3d at 1042. All of the alternative jobs identified by the ALJ at step five require only unskilled work and were identified by the VE as being within the RFC laid out in the ALJ's second hypothetical. Tr. 22, 65.

## VI. Assessment of Plaintiff's Impairments

Plaintiff contends that the ALJ erred at step three when he determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. The Social Security Regulations' "Listing of Impairments" generally describes impairments that are so severe as to be considered presumptively disabling, without further consideration of a claimant's residual functioning capacity, past relevant work, or other jobs. 20 C.F.R. §§ 404.1520(d); 416.920(d). A diagnosis of a listed impairment is not sufficient; the claimant must also satisfy the findings shown in the listing of that impairment. *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). A claimant has the burden to establish that he or she meets or equals the criteria for a listed impairment based on medical evidence. *Burch*, 400 F.3d at 683.

In this case, the ALJ found that Plaintiff had severe mental health impairments and evaluated them under the listing Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). Tr. 15. The ALJ found that Plaintiff's mental health impairments did not meet or equal a listed impairment. Tr. 15-17. Plaintiff contends that the ALJ erred by not evaluating Plaintiff's mental impairments under 12.03 (other psychotic disorders) and 12.08 (personality disorders). Plaintiff summarily states that "medical evidence existed" to support such findings, but provides no citations to such evidence in the record. "A finding of equivalence must be based on medical evidence only." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). "A

generalized assertion of functional problems is not enough to establish disability at step three."
*Tackett*, 180 F.3d at 1100.

Plaintiff also contends that the ALJ incorrectly assessed Plaintiff's impairments under B and C criteria for 12.04 and 12.06. In particular, Plaintiff asserts that the ALJ failed to assess her impairment under the C criteria for 12.06. An impairment meets the required level of severity under 12.04 if it satisfies either C criteria or the A and B criteria. 20 C.F.R. pt 404, subpt. P, app. 1, § 12.04. An impairment meets the required level of severity under 12.06 if it satisfies the requirements of the A or B criteria, or the A and C criteria. *Id*, at § 12.06. The B criteria are identical under both 12.04 and 12.06 and the ALJ concluded that Plaintiff did not satisfy those requirements. Tr. 16.

The C criteria of each listing, however, are different. Under 12.04, the claimant must have "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," as well as one of the following: (1) "[r]epeated episodes of decompensation, each of extended duration;" (2) "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate;" or (3) "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. pt 404, subpt. P, app. 1, § 12.04. The ALJ determined that Plaintiff did not meet the C criteria for 12.04. Tr. 16-17.

The C criteria of 12.06 require a medically documented impairment "[r]esulting in complete inability to function independently outside the area of one's home." 20 C.F.R. pt 404,

subpt. P, app. 1, § 12.06.  The ALJ found that Plaintiff did not meet the C criteria of 12.06, although he did not explicitly list that limitation.  Tr. 16.  Plaintiff does not point to any evidence that Plaintiff's impairment resulted in a complete inability to function independently outside of the area of her home.  Nor is that contention supported by the record, which contains evidence of Plaintiff's ability to function outside of her home.  Tr. 284-85.

I conclude that the ALJ's findings at step three are adequately supported by substantial evidence.

## CONCLUSION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this action is DISMISSED.

DATED this ___28___ day of October, 2015.

OWEN M. PANNER
United States District Judge